The opinion of the Court was delivered by
J ohnston, Ch.
I am to announce the opinion of the Court, in which I concur.
It is that the appeal should be sustained; and as the circuit decree must be set aside, and as in any further proceedings *248 which may be had in the case, it will be almost impossible to separate the defendant, Sligh, from the appellants, that it is but just he should have the benefit of their appeal, although not a party to it.
*247 Note. — This case was heard at November and December Term, 1857, but the opinion was not delivered until May Term, 1858.
*248 Crosson, one of the assignees, is made out to have received and made way with a portion of the proceeds of assigned estate which was sold; and the question raised and decided on the circuit was whether Sligh, his co-assignee, and Williams and Baxter, the two agents of the creditors, were — by mere force of the statute relating to assignments, (a) and without proof of any special circumstances implicating them in his misconduct — chargeable, jointly with him, for the sum he had embezzled.
I am of opinion the construction of the statute adopted on the circuit was hasty and ill-advised. In fact, the argument addressed to the Court there was quite foreign to the point involved; and served, in some degree, to withdraw its attention from the true questions in the case.
It is not to be disguised that the general tenor of the statute is to create a joint authority of agents and assignees over the subjects of their trusts; but it is by no means a necessary legal consequence of this that all of them are responsible for the acts of each.
It is a general principle of equity, in this State, that the liability or non-liability of a trustee depends on his bona fides and the exercise of that degree of diligence which a prudent man of ordinary intelligence would employ in his own affairs. This is the rule in the case of a sole trustee; and it must unquestionably apply, with more force, in the case of joint trustees, when a portion of them, guilty of no dereliction of duty themselves, are sought to be made liable for the misconduct of their colleagues.
If we look to cases somewhat analogous to the one before us, of joint executors or administrators, the doctrine in this *249 State is that, in general, each trustee is liable for his own acts alone, except so far as he may have contributed to the acts of his fellows. (b.) In the case of administrators, considered merely in the light of trustees, this is no less true than in the case of executors. It is only through the administration bond, to which all the administrators are parties, that one of them is made responsible, by virtue of his legal obligation, for the mal-administration of the others. He has engaged, by the bond, to become surety for the administration, and must be charged as such; though as mere trustee he would be exonerated.
The case of Acheson vs. Robertson, a case of joint executors, may have carried the doctrine of which I speak, as far as it can well go; but it is, on that account, only a more distinct recognition of that doctrine; in which light I make particular mention of it.
Is there anything in the statute .under consideration that, properly regarded, should put the case of assignees and agents of an insolvent upon a ■ different footing ? I .am persffaded there is not.
It may-be said that the other parties assisted Crosson, the defaulting assignee, to obtain the fund he wasted. If by this is meant that by joining him in the acceptance of the trust, they helped him to acquire the power which he abused,,-it is obvious that the remark would be equally true of all joint trustees; and in the case of executors, we have seen that the taking out joint letters has not the eifect of making one executor the guarantor of the other.
Again, it may be said that Sligh, Williams and Baxter, having joined Crosson in the sale of the property, and having taken the securities for the sale in the name of all the trustees, (I am stating facts which do not appear, in order to put the case more strongly,) and then having left the securities in his *250 hands, enabled him, individually, to receive the money, and should, therefore, answer for his use of it But it is matter of necessity that securities or funds belonging to a trust estate must be in individual hands. It is a physical impossibility that they should be in the constant custody of all the trustees. In Acheson vs. Robertson, the executors had made a joint sale, and taken the securities in their joint names, and then divided the securities between them, making a joint return of the sale; yet it was held that one was not liable for the devastavit committed by the other, of the securities he had received.
It is not clear that the legal title of the propeity sold in the present case was not exclusively in the assignees, and if so, there is the less pretence to hold the agents responsible. Certainly, at common law, and independently of statute regulation, a conveyance, such as the assignment of a failing debtor, vests the title in the person to whom the conveyance is made, that is, in the assignee. And though the conveyance be subject to a controlling influence, lodged in a third person, (I refer here to the control which the statute gives to the agents,) this control amounts only to a power, and not to a title in such third person.
This is clearly the law, independently of the statute regulating assignnients. The title must be in the assignees, unless the statute takes a portion of it from them, and lodges it in the agents. The statute. is full of provisions directing the agents to act jointly with the assignees in selling the property and distributing its proceeds — which, as I have observed, confers a power upon them — but I find nothing detracting from the title of the assignees, or translating any portion of it to the agents, except in the single instance mentioned in the second section of the statute, where the assignees shall have neglected to assemble the creditors within a specified time; in which case the creditors are authorized to convene, of their own accord, and appoint agents, who, under order.of a judge or chancellor, may take possession of the assigned estate.
*251 It follows, from what I have said, that in the present case, Crosson and Sligh, the assignees, had the title of the property sold, and each of them an equal right to the securities taken for it; and, as between themselves, being joint trustees of the subject matter, each had a right to receive, as Crosson did, without subjecting the other to liability for the sum thus received.
It may be asked what, then, is the function of the agents under an assignment? They are the agents of the creditors; and their function is to supervise what is done, and see that their principals suffer no detriment. No doubt they are liable for loss arising from their gross neglect of duty, as well as for any positive act of wrong done by them. If they see any wrong, either of omission or commission, going on, they should interpose, and if necessary, bring suit to arrest it. Though the title be in the assignees, it is subject to an equity in creditors, and, of course, in their agents; and in case of collusion between purchasers and the assignees, or in case of any other fraud which the agents may arrest or correct, it is their duty (for the gross neglect of which they are liable) to interfere and prevent or remedy the consequences. Thus, though a joint liability does not arise by simple construction of the statute, and though the trustees are not liable by construction for the acts of each other, yet they may make themselves liable by express acts against duty, or by wilful neglect of duty. The circuit decree took up the subject upon the simple construction of the statute, and, of course, shut out all enquiry as to the particular conduct of the defendants, Sligh, Williams and Baxter. That conduct may now be inquired into, if the plaintiff supposes he can make out improper conduct on their part.
There is one clause of the statute which declares that the proceeds of sales, which are directed to be deposited in the Bank of the State, or its branches, shall be subject to the joint draft of assignees and agents. Had Crosson received the fund he wasted upon such a draft, it might have become a ques *252 tion whether all the trustees so drawing might not have been charged. I form no conclusion, but I suppose they would not, unless circumstances showed a fraudulent and collusive intent in the others to connive at an intended peculation on his part. But this point cannot arise in this case.
It is ordered that the circuit decree and the report of the Commissioner be set aside — except as to the defendant Cros--son, as to whom they shall stand — and that the matters referred be taken up on reference de novo, according to this opinion.
Dunkin, Dargan and Wardlaw, CC., concurred. -

Appeal sustained.

 A. A., 1828, 6 Stat. L., 365.

) Vide Clark vs. Jenkins, 3 Rich. Eq. 319; Lenoir vs. Baxter, 4 Des. R. 65; Knox vs. Pickett, id. 93; Wilkes vs. Davis, Hill Ch. 3; Johnson vs. Johnson, 2 Hill Ch. 277; O'Neall vs. Herbert, Dudl. Eq. 30; Gayden vs. Gayden, McMull Eq. 444; Acheson vs. Robertson, 3 Rich. Eq. 132.